**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| | ) |
| **v.** | ) |
| | )   **2:21-cr-00015-JDL** |
| **JASON CANDELARIO, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER ON THE DEFENDANT'S MOTIONS TO SUPPRESS**

On February 25, 2021, Defendant Jason Candelario was indicted for: (1) conspiracy to commit robbery in violation of the Hobbs Act (18 U.S.C.A. § 1951(a) (West 2022)); (2) using or threatening violence in connection with a plan to commit robbery in violation of the Hobbs Act; (3) discharging a firearm during a violent crime; (4) brandishing a firearm; and (5) possession of ammunition after prior convictions.[1] A Motion for Leave to Dismiss Counts III and IV (ECF No. 313) was granted on November 1, 2022 (ECF No. 316).

As part of its investigation, the FBI issued two subpoenas pursuant to section 506 of the Comprehensive Drug Abuse Prevention and Control Acts of 1970 ("Controlled Substances Act"), 21 U.S.C.A. §§ 876 (West 2022), to obtain Candelario's cell phone records from electronic communications providers (ECF Nos. 274 and 275). Subsequently, the FBI executed two search warrants for cell site location data and call records from two additional cell phone numbers belonging to Candelario.

---

[1] A superseding indictment (ECF No. 115) was filed on July 22, 2021, amending Count V to include possession of firearms and ammunition.

Candelario filed two Motions to Suppress on July 18 and July 21, 2022. The first Motion to Suppress (ECF No. 271) challenges all of the evidence obtained through subpoenas issued pursuant to the Controlled Substances Act, 21 U.S.C.A. § 876, which authorizes the Attorney General "[i]n any investigation relating to his functions under this subchapter with respect to controlled substances . . . [to] subp[o]ena witnesses, compel the attendance and testimony of witnesses, and require the production of any records . . . which the Attorney General finds relevant or material to the investigation." 21 U.S.C.A. § 876(a). Candelario argues that the subpoenas were not statutorily authorized because neither he nor his co-Defendants had been investigated or indicted for any violations under the Controlled Substances Act, and thus any of the alleged evidence that was obtained would be immaterial to an authorized investigation.[2] He also argues that the subpoenas failed to specify the materials to be produced with "reasonable particularity." ECF No. 271 at 3.

Candelario's second Motion to Suppress (ECF No. 277) seeks to suppress "all evidence of the location of any cell phone associated with [Candelario] and all evidence obtained pursuant to the search warrants dated September 6, 2019." The

---

[2] Candelario also argues that the subpoenas violated the Stored Communications Act, 18 U.S.C.A. §§ 2701-2713 (West 2022) because the Government lacked a valid administrative warrant. The Stored Communications Act allows the government to require an electronic service provider to disclose "a record or other information pertaining to a subscriber . . . (not including the contents of communications)" if the government seeks only the name, address, phone connection records, length of service, and billing information and obtains a statutorily authorized subpoena. § 2703(c)(1)-(2). Even if I were to find that the investigation into the August 3, 2019, robbery was not an authorized investigation under the Controlled Substances Act, suppression of evidence is not a remedy for violations of the Stored Communications Act because the Act explicitly states that "remedies and sanctions described in this chapter are the *only* judicial remedies and sanctions for nonconstitutional violations of this chapter." § 2708 (emphasis added).

motion asserts that the probable cause used to support the warrants was based on illegally obtained evidence from the subpoenas.  ECF No. 277 at 1.

On September 26, 2022, Defendant Derek Daprato joined both motions to suppress (ECF No. 303).  A hearing on the motions was held on October 24, 2022. (ECF No. 309).

## I.  FACTUAL BACKGROUND

The Affidavit of FBI Agent Patrick M. Clancy dated September 6, 2019, describes the following timeline of events.  On August 3, 2019, a 9-1-1 call to the York Police Department reported a shooting at 3 Rowe Falls Lane, York, Maine.  Video and audio surveillance captured by the homeowner, who later told investigators that he was "in the business of distributing marijuana," showed footage of two masked individuals entering the house at approximately 12:26 a.m.  ECF No. 277 at 15, ¶11. While the individuals were in the house, the surveillance captured sounds of "a struggle . . . followed by a single gunshot," and then the individuals fled down the driveway at approximately 12:36 a.m.  One of the individuals was carrying what appeared to be a handgun.  It was later discovered that the individuals left behind a backpack containing duct tape, zip ties, and white plastic bags.  Seven minutes after the 9-1-1 call reporting the shooting in York, a police vehicle captured the license plate of a passing car on a "not [] heavily traveled roadway" near the scene.  ECF No. 277 at 16, ¶13.  This vehicle was later connected to co-Defendant Luis Carpio.

Law enforcement became aware of a parallel investigation in Canton, Massachusetts, involving a similar armed robbery, which was also captured on video, that was allegedly perpetrated by Candelario on July 20, 2019.  The Canton Police

Department issued an arrest warrant for Candelario on August 2, 2019, one day before the York, Maine incident. The first subpoena (the "July 31st subpoena") of Candelario's cell phone records (978-323-1978) was issued on July 31, 2019, purportedly in connection with the Canton robbery. The second subpoena (the "August 7th subpoena") of Candelario's cell phone records (978-323-1978) was issued on August 7, 2019 (ECF No. 274). Both subpoenas were limited to "[a]ll customer or subscriber information, including name, address, billing address, and email address if provided; all telephone connection records, including incoming and outgoing calls and text messages (SMS); and length of service (activation/deactivation dates)."[3] ECF No. 274 at 4.

Following the issuance of the two subpoenas of Candelario's cell phone records (for the number 978-323-1978), investigators subpoenaed Carpio's call activity and toll records on August 12, 2019. An analysis of Carpio's toll records also showed that Carpio had phone contact 126 times with two additional phone numbers associated with Candelario, including on the day of the robbery in Massachusetts and on August 2 and 3, 2019. Following a separate incident involving Carpio on August 21, 2019, the Manchester Police Department obtained cell site location data from his phone records. The records showed that the cell phone had been in the area of the York robbery starting at 12:09 a.m. and "remained in the area until approximately 3:30 [a.m.]-4:00 [a.m.]" on August 3, 2019. ECF No. 277 at 19, ¶¶27-28.

---

[3] The July 31st subpoena contained similar language: "Customer or subscriber name, address of service, and billing address; Length of service (including start date and end date); Local and long distance telephone connection records (examples include: incoming and outgoing calls, push-to-talk, and SMS/MMS connection records). ECF No. 275.

Investigators then obtained and executed two search warrants on September 6, 2019, for records from two different cell phones belonging to Candelario. The warrants for 603-341-0159 and 603-716-1370 sought "[h]istorical cell site and sector/face information . . . for the period July 18, 2019, through August 10, 2019, along with a listing of all control channels and their corresponding cell sites and an engineering map showing all cell site tower locations, sectors, and orientations." ECF No. 277 at 10-11, 28-29.

## II.  LEGAL ANALYSIS

I first address Candelario's argument that the warrantless subpoenas were unlawful because they sought an unreasonable amount of information for an unlimited period of time and were not authorized under the Controlled Substances Act due to the nature of the investigation. I then address Candelario's claim that the use of the allegedly invalid subpoenas violated the Fourth Amendment.

### 1.  Warrantless Subpoenas

Administrative subpoenas do not need to meet the probable cause standard required for search warrants so long as they are related to an "investigation [] authorized by Congress . . . and the documents sought are relevant to the inquiry." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-09 (1946). "[T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described[]' . . . . The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable." *Id.* at 208. Contrary to Candelario's first argument, the challenged subpoenas specified a reasonable amount of basic user information and

connection records, seeking no more than the name and address of the subscriber, the billing address, telephone and text message call logs, and activation and deactivation of service dates.  The collection of this information was limited to time periods prior to, during, and immediately following the two robberies, all of which would be relevant to a criminal investigation, and the subpoenas did not seek the content of any communications or request cell phone location data.  Thus, the subpoenas were reasonably limited in both scope and duration, and they were issued in good faith and plainly relevant to the ongoing investigation.  Moreover, the subpoenas were statutorily authorized because the investigations involved a robbery and a conspiracy to rob a marijuana distributor, and the potential distribution and possession of controlled substances, which are prohibited acts explicitly addressed by the Controlled Substances Act.[4]  *See* 21 U.S.C.A. § 841(a).

## 2.     Allegedly Invalid Subpoenas

Candelario also contends that his Fourth Amendment right to privacy was violated by the Government having obtained his basic cell phone user information through the subpoenas issued to the third-party cellular carriers because the subpoenas were not supported by a finding of probable cause by a judicial officer.

---

[4] At the hearing held on October 24, 2022, Candelario clarified that the subpoena attached to the second Motion to Suppress (ECF No. 277 at 43) was not one of the challenged subpoenas at issue in the first Motion to Suppress.  Regarding the two subpoenas (ECF Nos. 274 and 275) that were challenged in the first Motion to Suppress, Candelario conceded that they had been issued in connection with an ongoing criminal investigation in Massachusetts and not in connection with the investigation in York Maine.  Candelario further conceded that, based on the phone company records and other information provided by the Government's attorneys, the Government had obtained Candelario's cell site location information through the search warrants, and not from the earlier subpoenas by which the Government had gained access to Candelario's cell phone records.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see Mitchell v. Wisconsin*, 588 U.S. __, 139 S. Ct. 2525, 2534 (2019). Standing to bring a claim for unlawful search and seizure in violation of the Fourth Amendment requires that a person "claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Sanchez*, 943 F.2d 110, 112 (1st Cir. 1991) ("Because Fourth Amendment rights are personal and may not be asserted vicariously, the first inquiry in examining a [F]ourth [A]mendment claim is whether the defendant had a legitimate expectation of privacy in the area searched or the item seized."). The legitimacy of a defendant's expectation of privacy rests on a number of factors including "the existence or nonexistence of privacy . . . and the objective reasonableness of such an expectancy under the facts of a given case." *Sanchez*, 943 F.2d at 113 (quoting *United States v. Aguirre*, 839 F.2d 854, 857 (1st Cir. 1988)).

Here, Candelario alleges that he had a legitimate expectation of privacy in his phone records, and that pursuant to *Carpenter v. United States*, 585 U.S.__, 138 S. Ct. 2206 (2018), the Fourth Amendment provides protection when "the [G]overnment seeks pervasive information that is automatically recorded (rather than voluntarily shared)" from a cell phone. ECF No. 271 at 5. He argues that because the subpoenas were executed without warrants supported by probable cause, they constituted an unlawful search of "a substantial amount of [cell phone] data that was automatically collected from a user [by a third-party provider]" in violation of the Fourth

Amendment.  *Id.*  The Government argues that Candelario's reliance on *Carpenter* is misplaced, and that he does not have standing to challenge the validity of the subpoenas because they were issued to third-party businesses and Candelario does not have a "recognizable privacy interest" in his phone records.  ECF No. 294 at 6. The Government has the better argument.

In *Carpenter*, the defendant was charged with six counts of robbery and six counts of carrying a firearm during a federal crime of violence.  138 S. Ct. at 2212. Pursuant to the Stored Communications Act, 18 U.S.C.A. §§ 2701-2713 (West 2022), a court ordered two wireless carriers to disclose the defendant's phone records, including cell site location information from all incoming and outgoing calls in a four-month period.  138 S. Ct. at 2212.  The Government used this location data to place the defendant near the location of four robberies, and, following his conviction, the defendant was sentenced to more than 100 years in prison.  *Id*. at 2212-13.  The Sixth Circuit held that the defendant had voluntarily shared his phone location records with the wireless carriers and that the "resulting business records are not entitled to Fourth Amendment protection."  *Id*. at 2213 (citing *United States v. Carpenter*, 819 F.3d 880, 888 (6th Cir. 2016), *rev'd and remanded*, 138 S. Ct. 2206 (2018)).  The Supreme Court reversed, finding that individuals have a legitimate expectation of privacy in cell site location information due to its uniquely broad and invasive character, and that the "acquisition of the cell-site records . . . was a search under the [Fourth Amendment]" that required a warrant.  *Carpenter*, 138 S. Ct. at 2223.

However, *Carpenter* addressed cell site location information and although its rationale may extend to similarly intrusive types of data, the decision does not disturb

the general rule that individuals do not have a reasonable expectation of privacy in their basic user information and connection records. *Smith*, 442 U.S. at 744 ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business.  In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed.").  Although *Carpenter* does reference "automatically" collected data that a user would be unable to prevent the wireless carrier from collecting, the decision is referring specifically to cell site location information, which generates large amounts of highly personal and invasive data. *Carpenter*, 138 S. Ct. at 2220.  *Carpenter* explicitly described "the unique nature of cell phone *location* information," and distinguished cell site location information from "telephone call logs [which] reveal little in the way of 'identifying information'" and noted that "there are no comparable limits on the revealing nature of [cell site location information]." *Id.* at 2219-20 (emphasis added).  Although Candelario urges that *Carpenter*'s holding should extend beyond cell site location information to encompass additional customer information that a cellular carrier provides in response to a subpoena, without having first sought its customer's consent, he has offered no convincing rationale for doing so, nor has he cited to any decisions that would support this position.

Unlike the cell phone records considered in *Carpenter*, which involved disclosure of cell site location data for all incoming and outgoing calls over a four-month period, *id.* at 2212, the subpoenas challenged by Candelario did not include any requests for cell site location information.  Rather, the subpoenas sought basic

user information and connection logs over a limited period of time.  Accordingly, because Candelario does not hold a legitimate expectation of privacy in his general cell phone records, the subpoenas did not constitute a search for purposes of the Fourth Amendment.

In addition, in his reply in support of the motions to suppress, Candelario asserted that Agent Clancy's "affidavit expressly relies on" cell site location information obtained through the administrative subpoenas.  ECF No. 298 at 3.  In fact, the cell site location information that Candelario refers to is from records obtained through the subpoena of Carpio's phone records—not Candelario's.[5] Moreover, at the hearing on the motions to suppress, Candelario acknowledged that the affidavit supporting the search warrants did not rely on evidence obtained through the two subpoenas related to his phone records.  Accordingly, this facet of Candelario's argument lacks any factual basis.

## III.  CONCLUSION

For the foregoing reasons, Defendant Jason Candelario's Motion to Suppress (ECF No. 271) and second Motion to Suppress (ECF No. 277), both of which have been joined by Defendant Derek Daprato, are **DENIED**.

**SO ORDERED.**                                    Dated:  November 2, 2022


_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**

---

[5] Because Candelario does not have a vicarious expectation of privacy in Carpio's phone records and the cell site location information contained in those records, he does not have standing to challenge any evidence that the Government allegedly obtained from them.  *See United States v. Soule*, 908 F.2d 1032, 1035-36 (1st Cir. 1990); *United States v. Padilla*, 508 U.S. 77, 81-82 (1993).